419 So.2d 796 (1982)
Reinolds Enrique CASTRO, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-894.
District Court of Appeal of Florida, Third District.
September 28, 1982.
Bennett H. Brummer, Public Defender and John H. Lipinski, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., for appellee.
*797 Before SCHWARTZ, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
When Reinolds Enrique Castro first came to our attention, he had been convicted in back-to-back bench trials after having been denied the services of a court-appointed lawyer and adequate information about his right to a jury trial. Because of these deficiencies, we set aside Castro's convictions. See Enrique v. State, 408 So.2d 635 (Fla. 3d DCA 1981).[1] We now learn that prior to our decision, Castro was again in the trial court facing yet another charge which ultimated in the conviction which is the subject of the present appeal. In connection with that charge, the trial court, in a somewhat inexplicable about-face,[2] appointed the Public Defender to represent Castro.
The assistant public defender who initially met with and represented Castro on the instant case was approached by the prosecutor to enter a plea in exchange for a five-year sentence[3] to run concurrently with the then-extant sentences imposed less than a month before in the counselless bench trials. The assistant public defender questioned in his own mind the validity of the prior convictions which were then being appealed, and it was his view that a plea should not be entered, at least until the merits of the defendant's appeals in the earlier cases were determined. He turned over the case to another assistant public defender, without informing his colleague or Castro about his doubts.
Castro's new counsel was aware that Castro had been convicted in the prior counselless non-jury trials and had received concurrent five-year sentences. However, he was unaware of the potential that those convictions might be reversed, and he assumed their validity. He asked Castro nothing about the preceding convictions and nothing about the pending case. He pursued no investigation of the merits of either. In respect to the earlier convictions, he "felt there was no reason to doubt that Mr. Castro had knowingly, voluntarily and intelligently waived his constitutional rights to counsel and jury trial...." Consequently, he counseled Castro to plead guilty in exchange for a promise that he would receive a sentence of five years to run concurrently with the five-year concurrent sentences imposed on the prior convictions. He did not tell Castro that such a plea would effectively insure that even a successful challenge to his prior convictions and sentences would, in large part, be academic. Instead, he told his client that it was in his best interest to plead guilty because there was no benefit to Castro if he was acquitted. The potential detriment which counsel sought to avoid was the possibility of a consecutive sentence and an enhanced sentence under the habitual felony offender law, § 775.084, Fla. Stat. (1979), based on the earlier felony convictions. The plea was entered and the concurrent five-year sentence imposed.
Essentially all of the above facts were spelled out in Castro's motion to vacate his plea, conviction and sentence filed under Rule 3.850 and in the unchallenged supporting affidavits of Castro and both assistant public defenders. The trial court denied the motion[4] and Castro appealed. Months later, the convictions and sentences in the earlier cases, the sine qua non of the plea in the present case, were set aside.
To determine whether an attorney has provided reasonably effective assistance *798 of counsel to his client, we look to the principles so recently adopted by our Supreme Court in Knight v. State, 394 So.2d 997 (Fla. 1981). First, there is no dispute that the specific omission upon which the ineffectiveness claim is based was appropriately pleaded.[5] Second, we have little doubt that counsel's failure to advise Castro that the proposed plea of guilty to avoid an enhanced or consecutive sentence was based on counsel's uninformed (and ultimately incorrect) assumption about the validity of the prior convictions and that such a failure was "a substantial and serious deficiency measurably below that of competent counsel." The threat of either an enhanced penalty or consecutive sentence which the plea sought to avoid was, of course, meaningless if the prior convictions were invalid; only arguably meaningful if the prior convictions were of questionable validity; and, at most, only one factor among others to be considered. Surely, a bargain for a maximum sentence to run concurrently with convictions that may very well be set aside is hardly a bargain. This is not to say that a fully-informed Castro could not have entered such a plea, or that the subsequent vacation of the prior convictions, standing alone, would have rendered counsel ineffective. In such a case, Castro could not be heard to complain.
"Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U.S. 708, 92 L.Ed. 309, 68 S.Ct. 316 (1948), a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered." Brady v. United States, 397 U.S. 742, 756-57, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747, 761 (1970).
But the wrong here is not that the defendant's "calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." The wrong is that counsel failed to carry out his duty to ascertain that his client's plea of guilty was entered voluntarily and knowingly, that is, upon advice which would enable the accused to make an informed, intelligent and conscious decision to plead guilty or not. Edwards v. State, 393 So.2d 597 (Fla. 3d DCA 1981); Herring v. Estelle, 491 F.2d 125 (5th Cir.1974). See Edwards v. Estelle, 541 F.2d 1162 (5th Cir.1976), cert. denied, 430 U.S. 973, 97 S.Ct. 1662, 52 L.Ed.2d 367 (1977). That duty encompasses not simply an assessment of the client's *799 guilt or innocence of the charges upon which the plea is to be entered,[6] but, as well, an assessment of the potential consequences of accepting or foregoing the plea bargain offered and the feasible options. Hawkman v. Parratt, 661 F.2d 1161 (8th Cir.1981); Beckham v. Wainwright, 639 F.2d 262 (5th Cir.1981); United States ex rel. Healey v. Cannon, 553 F.2d 1052 (7th Cir.1977).
In the strikingly similar case of Tolliver v. United States, 563 F.2d 1117 (4th Cir.1977), the defendant was held to have been denied the effective assistance of counsel where counsel urged him to plead guilty and accept an apparently advantageous plea bargain which would expose Tolliver to a maximum of five years imprisonment. Among other things, Tolliver's counsel advised him he was facing a maximum of eighteen years in jail if he went to trial and was convicted on both counts, since he could, because of previous drug convictions, be sentenced as a multiple drug offender; that if he went to trial he could be impeached by his prior convictions; and, finally, even if he was not sentenced as a multiple drug offender, the prior convictions would likely lead the court to impose a harsher sentence. What counsel failed to tell Tolliver was that the validity of his prior convictions, which was so central to their advice to him to accept the offered plea, was at least highly questionable.[7] The court concluded that counsel's misadvice was so flagrant that it obviously arose from neglect or ignorance rather than informed professional deliberation.
The third inquiry under Knight v. State, supra, is whether the deficiency in counsel's conduct is "substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings." We think the prejudice which results from a plea of guilty based on the erroneous advice of counsel, unlike the prejudice which results from counsel's conduct at a trial, is self-evident.
The State contends, however, that at the time Castro entered his plea, we had not invalidated his prior convictions, and because convictions are presumed valid, the entry of the plea was a good thing for Castro. It says further that the plea may still prove to be sound advice if Castro is, upon retrial of the earlier cases, convicted again. This may be true, but it certainly cannot be the test for measuring prejudice, for if it were, then prejudice could be shown only in cases where the defendant is ultimately acquitted at a later trial, which trial, ironically, can never be ordered unless the defendant shows that he was prejudiced at the earlier proceeding. The "likelihood that the deficient conduct affected the outcome of the court proceedings" refers not, as the State's Catch-22 suggests, see Holyoke Mutual Insurance Company in Salem v. Concrete Equipment, Inc., 394 So.2d 193, 194 n. 1 (Fla. 3d DCA 1981), to some ultimate outcome of acquittal, but rather to the outcome, albeit tentative, of the proceeding in which the alleged ineffectiveness occurs.[8] Thus, if a defendant is convicted and his conviction is attributable to ineffective *800 assistance of counsel, that conviction prejudices him and must fall even though he may ultimately be found guilty in an appropriately conducted trial. As the court observed in Tolliver v. United States:
"Of course it may well be, as the district court found, that counsel obtained for Tolliver `a good deal.' If guilty, Tolliver's sentence is relatively light compared to what the statutes permit. But at this juncture of the case, we cannot say what his sentence would otherwise have been had he gone to trial and been convicted on one or both of the charges. The fact remains that Tolliver was entitled to effective assistance of counsel when he tendered his plea and when he sought to withdraw his plea, and this he did not receive. Had he received it, the decision to plead guilty would have been his own depending upon his informed appraisal of the attractiveness of the government's offer.
"Because Tolliver did not receive effective assistance of counsel, it follows that his sentence must be vacated, his plea must be stricken, and he must be afforded the opportunity to plead anew." 563 F.2d at 1121 (citation omitted).
We think the same holds true for Castro  his judgment of conviction must be vacated, his plea of guilty stricken, and he must be afforded an opportunity to plead anew. In so deciding, we have not overlooked the fourth principle of Knight v. State, supra, that where the defendant shows a prima facie case of prejudice, the State has an opportunity to rebut these assertions by showing beyond a reasonable doubt that there was no prejudice in fact. That principle simply has no application in this case where the ineffectiveness of counsel is the total failure to evaluate the validity of prior convictions which are later set aside, which, in turn, resulted in a plea of guilty entered in exchange for a maximum sentence to run concurrently with the sentences imposed on such prior judgments of conviction.
Reversed and remanded.
NOTES
[1] The case is reported as Enrique v. State, because the informations charged Castro as Reynold Enrique a/k/a Reinolds Enrique Castro.
[2] See Enrique v. State, supra.
[3] The charge against Castro was grand theft in the second degree, a third-degree felony, see § 812.014(2)(b), Fla. Stat. (1979), punishable by a maximum term of imprisonment of five years. See § 775.082(3)(d), Fla. Stat. (1979). Thus, the purported attractiveness of the proposal was that the sentence was to be concurrent and the State would not seek to have Castro sentenced for this offense to ten years as an habitual felony offender. See § 775.084(4)(a)3, Fla. Stat. (1979).
[4] The trial court conducted no evidentiary hearing nor, since the facts were undisputed, was one necessary. However, based on the affidavits, the trial court found that Castro's counsel was not ineffective.
[5] The state claims that Castro's Rule 3.850 motion, because unsworn, was deficient. As we have noted, the motion was accompanied by the sworn affidavits of Castro and his counsel, which fully set forth all that the motion contained, and is more than sufficient to satisfy any requirement that the motion be sworn.
[6] As counsel candidly admitted, he did not even discuss the merits of the present case with Castro.
[7] Tolliver's prior convictions were for violations of Title 26 U.S.C. § 4744(a), which made unlawful the obtaining, transporting or concealment of marijuana without paying a transfer tax. Subsequently, the United States Supreme Court held in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), that a timely assertion of the Fifth Amendment privilege against self-incrimination would bar prosecution under that statute. By the time of Tolliver's plea, numerous federal courts, holding Leary retroactive, had invalidated convictions rendered before Leary.
[8] In Cox v. State, 407 So.2d 633 (Fla. 3d DCA 1981), the court decided that Cox's lawyer was not ineffective by failing to object to testimony that the Miranda-warned defendant remained silent in the face of police questioning because, at the time of trial, the law deemed that no objection was required. It was thus unnecessary to reach the question whether counsel's conduct, not deficient, affected the outcome of the court proceedings and therefore the further question, id. at 637 n. 9, which we now decide, whether "the court proceedings" refers to the particular proceeding where conviction occurs or the final disposition of the case.